FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

AUG 2 1 2003

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

INTERCEPT, INC. and INTERCEPT )
PAYMENT SOLUTIONS, INC.  f/k/a )
ELECTRONIC PAYMENT )
EXCHANGE, INC.; JOHN M. PERRY; )
and TIMOTHY BARNETT, )
)
)
)
Plaintiffs, )
) CIVIL ACTION NO:
v. ) 1:03-CV-2505
)
ALEC DOLLARHIDE, LEN )
CAMPAGNA, and NELCELA, INC., )
)
)
)
Defendants. )

## COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

Plaintiffs InterCept, Inc. ("InterCept"), InterCept Payment Solutions, Inc.

("IPS"), f/k/a Electronic Payment Exchange, Inc. ("EPX"), John M. Perry, and

Timothy Barnett (collectively referred to as "Plaintiffs") hereby file their

Complaint and Jury Demand.

### I.  Nature and Basis of Action

1.

This is an action arising under the Declaratory Judgment Act, 28 U.S.C. §

2201 and 2202, and Georgia state law.  InterCept and IPS seek damages against

Alec Dollarhide ("Dollarhide"), Len Campagna ("Campagna"), and Nelcela, Inc.

("Nelcela"), collectively referred to as "Defendants," because of fraud, negligent

misrepresentation, breach of fiduciary duties, breach of contract, conversion, and

tortious interference with prospective and/or existing contractual relations.

Plaintiffs further request declarations against Defendants that InterCept and IPS

own or, alternatively, have at least an implied license to software known as the

EPX Operations Software, that Plaintiffs did not infringe on any copyrights

allegedly owned by Defendants, and that Plaintiffs are not liable to Defendants for

replevin, conversion, constructive trust, breach of contract, breach of the covenant

of good faith and fair dealing, fraud, and fraudulent inducement.

## II.  The Parties

### 2.

InterCept is a corporation organized under the laws of Georgia.  Its principal

place of business is 3150 Holcomb Bridge Road, Suite 200, Norcross, Gwinnett

County, Georgia 30071.

### 3.

IPS is a corporation organized under the laws of the State of Delaware.  Its

principal place of business is 100 West Common Boulevard, Suite 100, New

ATL01/11447974v6

Castle, Delaware 19720.  InterCept Payment Solutions is a wholly-owned subsidiary of InterCept.  As set forth above, InterCept Payment Solutions formerly did business under the name of "Electronic Payment Exchange, Inc."

4.

Perry is a resident of Georgia.

5.

Barnett is a resident of Georgia.

6.

Dollarhide is a resident of Arizona.

7.

Campagna is a resident of Arizona.

8.

Nelcela is a corporation organized under the laws of Arizona.  Its principal place of business is 7500 East Pinnacle Peak Road, Building H221, Scottsdale AZ 85255.  Nelcela is a software development company that specializes in the development of electronic payments/transaction software.  Nelcela is owned by Dollarhide and Campagna.  Upon information and belief, Campagna is the President of Nelcela, and Dollarhide and Campagna each own 50% of the capital stock of Nelcela.

ATL01/11447974v6

## III.   JURISDICTION AND VENUE

9.

Upon information and belief, all defendants are citizens of Arizona and Plaintiffs are not citizens of Arizona.

10.

The amount in controversy between each Plaintiff and each Defendant separately is in excess of $75,000.

11.

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, diversity jurisdiction, and §1367, supplemental jurisdiction over state law claims.

12.

This Court has personal jurisdiction over Defendants pursuant to the laws of the State of Georgia, including the Georgia long-arm statute, O.C.G.A. § 9-10-90, et seq., as Defendants have purposefully availed themselves of the laws of the State of Georgia.

13.

Defendants are subject to the jurisdiction of this Court because, without limitation, they transacted business in this State, they have committed tortious acts

ATL01/11447974v6

that Defendants could have reasonably foreseen would (and did) cause tortious injury in this State, and they derived substantial revenue from business conducted within this State.

14.

Venue is proper pursuant to 28 U.S.C. § 1391.

## IV.    FACTUAL BACKGROUND

15.

InterCept, a public company, is a single-source provider of a broad range of technologies, products and services that work together to meet the technology and operating needs of financial institutions and merchants. InterCept's products and services include core data processing, check processing and imaging, electronic funds transfer, debit and credit card processing, data communications management, and related products and services.

16.

On or about March 20, 2002, InterCept announced publicly that it planned to merge with EPX.

17.

On or about May 21, 2002, InterCept, Merger Sub, a wholly-owned subsidiary of InterCept, EPX, and its stockholders entered into an Agreement and

Plan of Merger (the "Merger Agreement"). Pursuant to the Merger Agreement, the

Merger became effective on May 24, 2002. EPX, now known as InterCept

Payment Solutions, Inc., is a full-service electronic payment processing company

that specializes in enabling businesses to accept credit card, debit card and

electronic check payments.

18.

Pursuant to the Merger Agreement, Merger Sub merged with and into EPX.

The separate existence of Merger Sub thereupon ceased, and EPX, as the surviving

corporation in the Merger, continued its corporate existence under Delaware law as

a wholly-owned subsidiary of InterCept. As a result of the Merger, all of the

rights, privileges and powers of both the pre-Merger EPX entity and Merger Sub

vested in EPX as the surviving corporation.

19.

In January 2003, EPX changed its name to InterCept Payment Solutions,

Inc.

A.   Defendants' Misrepresentations and Omissions

20.

Prior to the Merger, Dollarhide was an employee of EPX. EPX hired

Dollarhide on or about July 1, 2001, and Dollarhide had been a consultant to EPX

- 6 -

prior to July 1, 2001. Dollarhide owned approximately 40,000 shares of EPX stock prior to the Merger (approximately 3.7% of the shares of outstanding common stock of EPX).

21.

Following the Merger, Dollarhide became the Vice President of Technology of EPX (n/k/a InterCept Payment Solutions).

22.

Prior to and following the Merger, Dollarhide was an officer and/or director of Nelcela and owned approximately 50% of its capital stock. Nelcela develops software including electronic payment and transaction software. Dollarhide has actual and/or apparent authority to bind Nelcela.

23.

Dollarhide executed a separate Joinder and Consent Agreement by which he agreed to be a party to and be bound by the provisions of the Merger Agreement and associated documents ("Joinder Agreement"). Through the Joinder Agreement, Dollarhide made certain representations and warranties to InterCept and Merger Sub, jointly and severally with EPX, in the Merger Agreement.

24.

In connection with the Merger, Dollarhide knowingly made certain

representations to InterCept and Merger Sub, as more fully described below, that InterCept and Merger Sub relied upon in consummating the Merger. Dollarhide represented, among other things, that EPX owned certain essential software and hardware used by EPX in its core operations.

25.

Prior to the Merger, EPX participated in the development of certain software used in electronic commerce transactions. EPX used this software in its core operations, and the software was essential to its business. The software consisted of at least three elements as described below (the "EPX Operations Software").

26.

One element of the EPX Operations Software was the "Terminal Driver – Modem Driver." This element receives and manages specially formatted data from a merchant's "point of sale" ("POS") device. A POS device is used by customers of a merchant to input their credit card information for a purchase. The Terminal Driver – Modem Driver element receives this credit card information and forwards it for authorization by a credit card company or association, such as Visa, MasterCard, or American Express. Virtually all of the EPX credit card authorizations pass through this software.

27.

A second element of the EPX Operations Software was the "Settlement System." This element formats the credit card information so that it can be sent to the credit card company or association. The element also controls the settlement (i.e., payment) of funds relating to the credit card charge. Virtually all of the EPX credit card settlements pass through this software.

28.

The third element of the EPX Operations Software was known as the "Merchant Suite." This element formed an essential connection between the Terminal Driver-Modem Driver, the Settlement System, and the associated supporting database elements. The Merchant Suite element managed a database of merchants, provisioned the Terminal Drivers accept connections from a merchant's POS device or TCP/IP connection, and supplied the human interface to the other elements. Without the Merchant Suite element, the other elements cannot be used.

29.

According to Dollarhide, he wrote some of the software in the EPX Operations Software before he became affiliated with EPX and while he was an officer, director, and/or employee of Nelcela. Upon information and belief, Dollarhide developed additional portions and features of the EPX Operations

- 9 -

Software after he became affiliated with EPX, initially as a consultant and later as an employee on or about July 1, 2001.

30.

All original expression contained in the EPX Operations Software developed by Dollarhide after July 1, 2001 was owned by EPX as a work-for-hire. EPX, n/k/a IPS, is therefore the owner of all right, title, and interest in the portions of the software written by Dollarhide while he was an employee of EPX.

31.

At all relevant times, Nelcela and, upon information and belief, Campagna as President of Nelcela, were aware, or are legally charged with knowledge, that EPX and InterCept were using the EPX Operations Software in EPX's core operations, including all portions thereof in which Nelcela claimed an ownership interest. Nelcela and, upon information and belief, Campagna as President of Nelcela, consented to this use, both actively and passively. Active consent included the continued development by Dollarhide, as an owner, director, and/or employee of Nelcela, of enhancements and modifications to the EPX Operations Software that Nelcela, through Dollarhide, knew to be essential to the continued operations of EPX.

- 10 -

32.

Before the Merger, Nelcela and, upon information and belief, Campagna as President of Nelcela, were aware, or are legally charged with knowledge, that EPX was entering into a merger transaction with InterCept.

33.

Nelcela and, upon information and belief, Campagna as President of Nelcela, through Dollarhide, also were aware of and consented, passively and actively, to transactions under which EPX and InterCept would transfer to third parties rights to copy, use, and create derivative works of the EPX Operations Software.

34.

Upon information and belief, Dollarhide had discussions with EPX, both before and after Dollarhide became an employee of EPX, about receiving compensation for the use of software Dollarhide had written prior to becoming an employee of EPX. Upon information and belief, pursuant to these conversations, Dollarhide agreed to subsequently transfer in writing all necessary rights in the EPX Operations Software to EPX when Dollarhide received the compensation.

35.

In connection with the Merger, Dollarhide, with the knowledge and consent

of Nelcela and Campagna, made oral and written representations that EPX owned

the EPX Operations Software. Dollarhide represented, among other things, that

EPX owned the EPX Operations Software and that no other party claimed rights to

the EPX Operations Software. Dollarhide further represented the following:

- Except as described in <u>Schedule 4.13</u>, each Seller Entity owns all of the Intellectual Property.

(Merger Agreement, Section 4.13(a));

- To the Seller's knowledge, there is no unauthorized use, disclosure, infringement or misappropriation by any third party of any Intellectual Property rights of any Seller Entity, including any trade secret used in or held for the use in the Seller's business.

(Merger Agreement, Section 4.13(c));

- Except as described in <u>Schedule 4.13(d)</u>, all patents, registered trademarks, service marks and copyrights held by each Seller Entity are valid and existing, and there is no assertion or claim (or basis therefore) challenging the validity of any Intellectual Property owned by of [sic] any Seller Entity. . . . To the Seller's knowledge, the conduct of the Seller's Business as currently conducted, including the use in any way of the Intellectual Property with respect to Seller's Business, does not infringe or conflict with, in any way, any license, trademark, trademark right, trade name, trade name right, patent, patent right, industrial model, invention, service mark or copyright of any third party. No third party is challenging the ownership by any Seller Entity, or the validity or effectiveness of, any of the Intellectual Property.

(Merger Agreement, Section 4.13(d));

- Each Seller Entity has secured valid written assignments from all employees and, to the Seller's knowledge, consultants and

independent contractors who contributed to the creation or development of Intellectual Property of the rights to such contributions that such Seller Entity does not already own by operation of law.

(Merger Agreement, Section 4.13(e)). All oral and written representations and warranties referred to in this Paragraph collectively are referred to as the "Software Ownership Representations."

36.

The Merger Agreement broadly defines "Intellectual Property" as including any "computer software and databases, whether owned or licensed" used in connection with EPX's business. (Merger Agreement at 2).

37.

Schedule 4.13 does not except anything from the Software Ownership Representations. Schedule 4.13 states only that EPX has no registered trademarks or registered software, and it provides a list of common law trademarks, products developed by EPX, and software and licensed computer programs. (Merger Agreement, Schedule 4.13).

38.

Notably, Schedule 4.13 of the Merger Agreement listed "Terminal Drivers," "Settlement," and "Payment Servers" as products developed by EPX and of which EPX has ownership. (Merger Agreement, Schedule 4.13).

- 13 -

39.

None of the elements of the EPX Operations Software was listed in

Schedule 4.13 as being software in which third parties claimed rights. In addition,

at no time did Dollarhide inform InterCept that he, Nelcela, nor any third party

claimed rights inconsistent with the actual and known intended uses by EPX of the

EPX Operations Software.

40.

As set forth above, Dollarhide and Nelcela claim an ownership interest in

portions of the EPX Operations Software, particularly those written prior to the

time Dollarhide became an employee of EPX on or about July 1, 2001. Nelcela

apparently claims this interest either because Dollarhide assigned any ownership

interest of his own as the author to Nelcela, or because one or more other authors

assigned their interests as authors to Nelcela.

41.

InterCept and Merger Sub reasonably relied upon the Software Ownership

Representations that, prior to the Merger, EPX owned all right, title and interest in

the EPX Operations Software. InterCept and Merger Sub further reasonably relied

upon the Software Ownership Representations that there were no third party rights

in the EPX Operations Software that would allow such third party to compete with

- 14 -

InterCept and EPX in the marketing and licensing of the EPX Operations Software
or any derivative work thereof.

42.

Defendants knew and intended that InterCept and Merger Sub would rely
upon the Software Ownership Representations.

43.

If InterCept and Merger Sub had known that Dollarhide and Nelcela would
claim rights in the EPX Operations Software directly contrary to the Software
Ownership Representations, they would not have entered into the Merger.
InterCept has been damaged as a result of its reasonable reliance on the Software
Ownership Representations.

44.

Dollarhide, with the knowledge and consent of Nelcela and Campagna, also
made knowingly false representations that EPX owned certain computer hardware
(the "Hardware Ownership Representations") that was essential to, and used in the
business of, EPX. Dollarhide knew and intended that InterCept and Merger Sub
would rely upon the Hardware Ownership Representations.

45.

InterCept and Merger Sub relied to their detriment on the Hardware

- 15 -

Ownership Representations.

46.

Dollarhide also intentionally and materially omitted and failed to disclose, in connection with Section 4.29 and Schedule 4.29 of the Merger Agreement, that he claims to have an interest in property or assets used by EPX in its business.

47.

Dollarhide and Nelcela now claim ownership interests in the hardware that the EPX Stockholders represented was owned by EPX.

48.

Either Dollarhide and Nelcela have transferred the Software and Hardware Ownership Rights described above, or Dollarhide has misrepresented to InterCept and Merger Sub the rights to the Software and Hardware conveyed in the Merger.

B.    Dollarhide's Breach of Fiduciary Duties

49.

As an officer and employee of EPX (n/k/a IPS), Dollarhide owed fiduciary duties to EPX.

50.

Dollarhide has, among other things, purported to license and use the EPX Operations Software through Nelcela to third parties that compete with EPX.

- 16 -

Dollarhide additionally has used certain hardware owned by EPX or InterCept to directly or indirectly compete with EPX.

51.

Dollarhide has dismantled the EPX Operations Software and certain hardware, and he has threatened to disrupt InterCept's and EPX's business.

52.

Dollarhide has improperly removed and converted physical copies of the EPX Operations Software owned by EPX that are either disks, tapes, CD-ROMs, magnetic copies, optical copies, and/or other physical embodiments of the EPX Operations Software.

53.

Dollarhide has improperly asserted ownership over the chattels of EPX and InterCept ("Disputed Chattels").

54.

Dollarhide wrongfully asserting ownership of the EPX Operations Software and certain hardware, surreptitiously allowed Nelcela rent-free use of EPX facilities and resources, and has disrupted InterCept's and EPX's business.

55.

Dollarhide's actions are wrongful, they are intended to compete with EPX,

- 17 -

they are intended and designed for personal gain, and they are intended and have

misappropriated corporate opportunities of EPX to Nelcela, a third party

competitor in which Dollarhide has a material financial interest.

56.

By these and other actions, Dollarhide has breached fiduciary duties he

owed to EPX.

57.

By these and other actions, Dollarhide has harmed EPX and InterCept by,

*inter alia*, forcing EPX and InterCept to immediately switch to a third-party

software suite with significantly higher usage fees, forcing EPX and InterCept to

devote substantial time to switching to alternative software, and forcing the

disruption and/or cancellation of at least one contract, with John Deere Co., in

which EPX was to receive one million dollars in guaranteed revenue per year for

five years.

C.      The John Deere Contract

58.

Prior to the Merger, InterCept began negotiations with John Deere     Co.

("John Deere") to develop software for John Deere to use in its in-house credit

operations.  On information and belief, Dollarhide was aware of such pre-Merger

- 18 -

negotiations.

59.

These negotiations continued following the Merger and after Dollarhide became the Vice President of Technology of EPX.  During the post-Merger negotiations with John Deere, InterCept and EPX represented to John Deere, among other things, that they owned the EPX Operating Software and could enter into a contract with John Deere to transfer the rights to copy, use, and create derivative works of the EPX Operations Software.  InterCept and EPX entered into a binding contract with John Deere to do so.

60.

Dollarhide and Nelcela were aware of the representations made by InterCept and EPX to John Deere, as well as the contract that ultimately was consummated. At no time, did Dollarhide or Nelcela make any claim of ownership to the EPX Operations Software.

61.

Dollarhide actively participated in modifying the EPX Operating Software for the John Deere contract.  On behalf of EPX, and as part of the contract, Dollarhide further traveled to John Deere's facilities to implement the software being developed for John Deere.

62.

The John Deere contract required that, in early 2003, the source code for the EPX Operating Software be deposited in trust with John Deere. At that time, and for the first time, Dollarhide claimed that he and/or Nelcela had an ownership right in the EPX Operating Software.

63.

Dollarhide and Campagna traveled to Atlanta, Georgia to meet with InterCept and EPX regarding the John Deere situation. At this meeting, Dollarhide and Campagna, on behalf of themselves and Nelcela, demanded millions of dollars from InterCept for rights to the EPX Operations Software they claim InterCept did not have -- but needed -- in order to perform the John Deere contract.

64.

At the Atlanta meeting, Dollarhide and Campagna acknowledged that Dollarhide was acting as an owner and officer of Nelcela at the same time he was acting as Vice President of Technology of EPX, and they conceded Dollarhide's dual employment.

65.

InterCept and EPX refused to pay the millions demanded by Dollarhide, Campagna, and Nelcela for the same rights the EPX Operations Software that

- 20 -

InterCept and EPX acquired in the Merger.

66.

EPX informed John Deere of Dollarhide's and Nelcela's claim of ownership

to the EPX Operations Software.  John Deere has taken the position that EPX is in

breach of the contract.

67.

To date, InterCept and EPX have incurred damages proximately caused by

the actions and conduct of Dollarhide and Nelcela in an amount exceeding $1

million.

D.    Defendants' Contentions

68.

Nelcela and Dollarhide have asserted that the Plaintiffs wrongfully seized

and converted certain items of personalty owned by Nelcela or Dollarhide (the

"Disputed Personalty") and that Nelcela and Dollarhide are entitled to replevin of,

damages for, and/or a constructive in the Disputed Personalty.

69.

Nelcela and Dollarhide have asserted that Dollarhide entered into a contract

with EPX before the Merger.  They further contend that InterCept knew of,

approved, and/or ratified the contract once the Merger was consummated.  Nelcela

- 21 -

and Dollarhide now assert that Plaintiffs fraudulently induced Nelcela and

Dollarhide into entering into that contract, breached that contract, and breached

attendant covenants of good faith and fair dealing.  Plaintiffs dispute these

assertions.

70.

Nelcela and Dollarhide have asserted that the Plaintiffs committed fraud

against Nelcela and Dollarhide by, *inter alia,* making false representations,

concealing and omitting material facts regarding Dollarhide's continued

employment and Plaintiffs' intentions to use software purportedly owned by

Nelcela and/or Dollarhide.  Plaintiffs dispute these allegations.

71.

Nelcela and Dollarhide have asserted that the Nelcela or Dollarhide own

various copyrights for software and that Plaintiffs are infringing those copyrights.

Plaintiffs dispute that they infringe any valid copyrights of either Nelcela or

Dollarhide.

ATL01/11447974v6

## V.    CAUSES OF ACTION

### COUNT ONE

#### Common Law Fraud and Deceit Against Defendants by InterCept

72.

InterCept incorporates by reference the allegations in Paragraphs 1 through and including 71 of this Complaint.

73.

Dollarhide has either improperly asserted a claim to the Software and Hardware (as described above), or he has knowingly made false representations and/or material omissions prior to and during the Merger, including, but not limited to the Software Ownership Representations and the Hardware Ownership Representations.

74.

At the time of the Merger, InterCept and Merger Sub were unaware that these representations – including, but not limited to the Software Ownership Representations and the Hardware Ownership Representations  -- were false and misleading.

ATL01/11447974v6

75.

At the time Dollarhide made these representations – including, but not limited to, the Software Ownership Representations and the Hardware Ownership Representations – Dollarhide knew that the representations were false and/or he knowingly omitted to disclose material information necessary to make the representations not misleading.

76.

Dollarhide knew and intended that InterCept and Merger Sub would rely on the representations, including, but not limited to, the Software Ownership Representations and the Hardware Ownership Representations.

77.

InterCept and Merger Sub reasonably and justifiably relied on the representations – including, but not limited to, the Software Ownership Representations and the Hardware Ownership Representations – to their detriment.

78.

Campagna, as President of Nelcela, aided and abetted the fraud by lending substantial assistance to Dollarhide during the Atlanta meeting by making knowingly false representations that Dollarhide and/or Nelcela owned title to the EPX Operations Software.

- 24 -

79.

Nelcela is directly and/or vicariously liable for the acts and omission of Dollarhide and Campagna.

80.

As a direct and proximate result, InterCept has been damaged by such fraud and deceit in an amount to be determined at trial.

81.

The actions and conduct Defendants was willful, malicious, fraudulent, wanton, oppressive, and/or showed an entire want of care sufficient to raise the presumption of conscious indifference to all consequences so as to justify an award of punitive damages in an amount to be proven at trial.

## COUNT TWO

### Negligent Misrepresentation Against Defendants by InterCept

82.

InterCept incorporates by reference the allegations in Paragraphs 1 through and including 81 of this Complaint.

83.

As set forth above, the facts indicate that Dollarhide has either improperly asserted a claim to the Software and Hardware (as described above), or he made

false representations and/or material omissions prior to and during the Merger, including, but not limited to, the Software Ownership Representations and the Hardware Ownership Representations. Dollarhide was at least negligent in making these representations and omissions, or acted recklessly without regard for their truth or falsity.

84.

Dollarhide knew and intended that InterCept and Merger Sub would rely on the representations including, but not limited to, the Software Ownership Representations and the Hardware Ownership Representations.

85.

InterCept and Merger Sub reasonably and justifiably relied on the representations – including, but not limited to, the Software Ownership Representations and the Hardware Ownership Representations – to their detriment.

86.

Campagna, as President of Nelcela, aided and abetted the negligent misrepresentations by lending substantial assistance to Dollarhide during the Atlanta meeting by making at least negligent misrepresentations, or acted recklessly without regard for their truth or falsity, that Dollarhide and/or Nelcela owned title to the EPX Operations Software.

- 26 -

87.

Nelcela is directly and/or vicariously liable for the acts and omission of Dollarhide and Campagna.

88.

As a direct and proximate result, InterCept has been damaged by such misrepresentations in an amount to be determined at trial.

## COUNT THREE

### Breach of Fiduciary Duties Against Defendants by EPX

89.

EPX incorporates by reference the allegations in Paragraphs 1 through and including 88 of this Complaint.

90.

Dollarhide owed fiduciary duties to EPX, including but not limited to, duties of loyalty and good faith.

91.

Dollarhide breached these fiduciary duties by, among other things, misappropriating corporate opportunities of EPX; dismantling the EPX Operations Software and certain hardware, removing physical copies of the EPX Operations Software owned by EPX, asserting ownership over the Disputed Chattels, and

- 27 -

competing, directly or indirectly, with EPX.

92.

Campagna, as President of Nelcela, aided and abetted the breach of fiduciary duty by lending substantial assistance to Dollarhide during the Atlanta meeting by making wrongful assertions that Dollarhide and/or Nelcela owned title to the EPX Operations Software.

93.

Nelcela is directly and/or vicariously liable for the acts and omission of Dollarhide and Campagna.

94.

As a direct and proximate result, EPX has been damaged by this breach of fiduciary duties in an amount to be determined at trial.

## COUNT FOUR

### Breach of Contract Representations and Warranties Against Defendants by InterCept

95.

InterCept incorporate by reference the allegations in Paragraphs 1 through and including 94 of this Complaint.

96.

Dollarhide executed the Joinder Agreement in which he made certain representations and warranties to InterCept and Merger Sub, jointly and severally with EPX, in the Merger Agreement. Dollarhide represented, among other things, that EPX owned the EPX Operations Software.

97.

Dollarhide breached the Merger Agreement by making a claim of ownership to the EPX Operations Software and, thus, rendering his representations and warranties false.

98.

Campagna aided and abetted Dollarhide in breaching the Merger Agreement.

99.

Nelcela is directly and/or vicariously liable for the acts and omission of Dollarhide and Campagna.

100.

As a direct and proximate result of this breach, InterCept has been damaged in an amount to be determined at trial.

## COUNT FIVE

### Conversion Against Defendants by InterCept and EPX

101.

InterCept and EPX incorporate by reference the allegations in Paragraphs 1 through and 100 including of this Complaint.

102.

Dollarhide has dismantled the EPX Operations Software and certain hardware owned by EPX, removed physical copies of the EPX Operations Software owned by EPX, and wrongfully asserted ownership over the Disputed Chattels.

103.

Campagna, as President of Nelcela, aided and abetted the conversion by lending substantial assistance to Dollarhide during the Atlanta meeting by making wrongful assertsions that Dollarhide and/or Nelcela owned title to the EPX Operations Software.

104.

Nelcela is directly and/or vicariously liable for the acts and omission of Dollarhide and Campagna.

105.

As a direct and proximate result, InterCept and EPX have been damaged by such conversion in an amount to be determined at trial.

106.

The actions and conduct Defendants was willful, malicious, fraudulent, wanton, oppressive, and/or showed an entire want of care sufficient to raise the presumption of conscious indifference to all consequences so as to justify an award of punitive damages in an amount to be proven at trial.

## COUNT SIX

### Tortious Interference with Prospective and/or Existing Business Relations Against Defendants by InterCept and EPX

107.

InterCept and EPX incorporate by reference the allegations in Paragraphs 1 through and 106 including of this Complaint.

108.

Dollarhide and Nelcela knowingly and intentionally interfered with the prospective and/or existing business relationship between InterCept/EPX and John Deere by, among other things, wrongfully claiming an ownership interest in the EPX Operations Software.

- 31 -

109.

Due to Dollarhide's and Nelcela's actions, John Deere has taken the position that InterCept and EPX are in breach of the contract.

110.

Dollarhide and Nelcela acted improperly and without privilege.

111.

Dollarhide and Nelcela acted purposefully and with malice with the intent to injure.

112.

Dollarhide and Nelcela induced John Deere not to enter into and/or not to continue a business relationship with InterCept and EPX.

113.

Campagna, as President of Nelcela, aided and abetted the interference with the prospective and/or existing business relationship between InterCept/EPX and John Deere by lending substantial assistance to Dollarhide during the Atlanta meeting by making wrongful assertsions that Dollarhide and/or Nelcela owned title to the EPX Operations Software.

114.

Nelcela is directly and/or vicariously liable for the acts and omission of

Dollarhide and Campagna.

115.

As a direct and proximate result of Defendants' actions, InterCept and EPX have been damaged in an amount to be determined at trial, but exceeding $ 1 million.

116.

The actions and conduct Defendants were willful, malicious, fraudulent, wanton, oppressive, and/or showed an entire want of care sufficient to raise the presumption of conscious indifference to all consequences so as to justify an award of punitive damages in an amount to be proven at trial.

COUNT SEVEN

Civil Conspiracy Against Defendants by InterCept and EPX

117.

InterCept and EPX incorporate by reference the allegations in Paragraphs 1 through and 116 including of this Complaint.

118.

Dollarhide, Campagna, and Nelcela, positively or tacitly, and acting in concert, came to an understanding and agreement that they would accomplish an unlawful end or some lawful end by unlawful means by, among other things, fraud,

- 33 -

negligent misrepresentation, conversion, and/or tortious interference with prospective and/or existing business relations.

119.

As a direct and proximate cause of the conduct of Dollarhide, Campagna, and Nelcela, InterCept and EPX have been damaged in an amount to be determined at trial.

120.

The actions and conduct Dollarhide, Campagna, and Nelcela were willful, malicious, fraudulent, wanton, oppressive, and/or showed an entire want of care sufficient to raise the presumption of conscious indifference to all consequences so as to justify an award of punitive damages in an amount to be proven at trial.

## COUNT EIGHT

### Declaratory Judgment of Ownership of the EPX Operations Software Against Dollarhide and Nelcela Because of Estoppel

121.

InterCept and EPX incorporate by reference the allegations in Paragraphs 1 through 120 and including of this Complaint.

122.

A current and justiciable controversy now exists between InterCept and EPX, on the one hand, and Dollarhide and Nelcela, on the other hand, with respect

- 34 -

to the rights of InterCept and EPX in the EPX Operations Software.

123.

Dollarhide represented that EPX owned the EPX Operations Software.

124.

Dollarhide had sufficient authority to bind Nelcela in the transfer of any

ownership rights in the EPX Operations Software.

125.

InterCept and EPX acted upon and relied in good faith upon Dollarhide's

representations regarding the ownership of the EPX Operations Software.

126.

Dollarhide and Nelcela now are repudiating these representations.

127.

InterCept and EPX are entitled to a declaratory judgment that Dollarhide and

Nelcela are estopped from denying EPX's ownership of the EPX Operations

Software and an order affirming ownership by InterCept and EPX of the EPX

Operations Software.

## COUNT NINE

Declaratory Judgment that the Merger Agreement constituted a writing sufficient
to transfer ownership of the EPX Operations Software to InterCept and EPX

128.

InterCept and EPX incorporate by reference the allegations in Paragraphs 1 through and including 127 of this Complaint.

129.

A current and justiciable controversy now exists between InterCept and EPX, on the one hand, and Dollarhide and Nelcela, on the other hand, with respect to the rights of InterCept and EPX in the EPX Operations Software.

130.

Dollarhide had sufficient authority to bind Nelcela in the transfer of any ownership rights in the EPX Operations Software.

131.

Dollarhide agreed to transfer in writing all necessary rights in the EPX Operations Software to EPX when Dollarhide received compensation.

132.

In connection with the Merger, Dollarhide made oral and written representations that EPX owned the EPX Operations Software and that no other party claimed rights to the EPX Operations Software.

- 36 -

133.

Upon information or belief, these representations are sufficient, under 17 U.S.C. § 204(a), to transfer ownership of any copyrights in the EPX Operations Software to EPX, n/k/a InterCept Payment Solutions, Inc.

134.

Dollarhide and Nelcela now are asserting ownership of the copyrights in the EPX Operations Software.

135.

InterCept and EPX are entitled to a declaratory judgment that Dollarhide and Nelcela transferred ownership of the EPX Operations Software to EPX pursuant to the Merger Agreement, an order affirming ownership by InterCept and EPX of the EPX Operations Software, and an order directing Dollarhide and Nelcela to take all necessary steps to effect the confirmation of ownership of the EPX Operations Software upon EPX.

## COUNT TEN

### Declaratory Judgment that EPX and InterCept have an implied license to the EPX Operations Software against Dollarhide and Nelcela

136.

InterCept and EPX incorporate by reference the allegations in Paragraphs 1 through and including 135 of this Complaint.

- 37 -

137.

A current and justiciable controversy now exists between InterCept and

EPX, on the one hand, and Dollarhide and Nelcela, on the other hand, with respect

to the ability of InterCept and EPX to use the EPX Operations Software.

138.

Dollarhide had sufficient authority to bind Nelcela in the transfer of any

ownership rights in the EPX Operations Software.

139.

At all relevant times, Nelcela was aware, or is legally charged with

knowledge, that EPX and InterCept were using the EPX Operations Software in

EPX's core operations, including all portions thereof in which Nelcela claimed an

ownership interest.

140.

Nelcela consented to this use, both actively and passively.

141.

Nelcela, through Dollarhide, also was aware of and consented, passively and

actively, to transactions under which EPX and InterCept would transfer to third

parties rights to copy, use, and create derivative works of the EPX Operations

Software.

- 38 -

142.

Nelcela's active and passive consent to InterCept's and EPX's use, distribution of, and transfer of rights in the EPX Operations Software created an implied license to continue such conduct.

143.

Dollarhide and Nelcela now are repudiating this implied license.

144.

InterCept and EPX are entitled to a declaratory judgment that they have at least a non-exclusive implied license in the EPX Operations Software to use, copy, make derivative works, and to transfer to third parties rights to copy, use, and create derivative works of the EPX Operations Software.

## COUNT ELEVEN

### Declaratory Judgment that Dollarhide and Nelcela are not entitled to Replevin

145.

Plaintiffs incorporate by reference the allegations in Paragraphs 1 through and including 144 of this Complaint.

146.

A current and justiciable controversy now exists between Plaintiffs, on the one hand, and Dollarhide and Nelcela, on the other hand, with respect to the

ATL01/11447974v6

ownership and/or custody of the Disputed Personalty.

147.

Nelcela and Dollarhide have asserted that the disputed Personalty was wrongfully seized by Plaintiffs, that Nelcela or Dollarhide are the true owners of the Disputed Personalty, and that Nelcela and Dollarhide are entitled to replevin of the Disputed Personalty. InterCept and EPX dispute these assertions.

148.

Plaintiffs are entitled to a declaratory judgment that they have not wrongfully seized the Disputed Personalty and that Dollarhide and/or Nelcela are not entitled to replevin of the Disputed Personalty.

COUNT NINE

Declaratory Judgment that Plaintiffs have not wrongfully converted personalty of Dollarhide or Nelcela

149.

Plaintiffs incorporate by reference the allegations in Paragraphs 1 through and including 148 of this Complaint.

150.

A current and justiciable controversy now exists between Plaintiffs, on the one hand, and Dollarhide and Nelcela, on the other hand, with respect to whether Plaintiffs wrongly converted the Disputed Personalty.

- 40 -

151.

Nelcela and Dollarhide have asserted that the Disputed Personalty was wrongfully converted by Plaintiffs for Plaintiffs' own benefit and that Nelcela or Dollarhide are the true owners of the Disputed Personalty.

152.

Plaintiffs are entitled to a declaratory judgment that they have not wrongfully converted the Disputed Personalty.

## COUNT TEN

### Declaratory Judgment that Nelcela and Dollarhide are not entitled to a constructive trust over personalty

153.

Plaintiffs incorporate by reference the allegations in Paragraphs 1 through and including 152 of this Complaint.

154.

A current and justiciable controversy now exists between Plaintiffs, on the one hand, and Dollarhide and Nelcela, on the other hand, with respect to whether a constructive trust should be imposed over the Disputed Personalty.

155.

Nelcela and Dollarhide have asserted that the Disputed Personalty was wrongfully converted by Plaintiffs and that a constructive trust should be imposed.

ATL01/11447974v6

Plaintiffs dispute these assertions.

156.

Plaintiffs are entitled to a declaratory judgment that they have not wrongfully converted the Disputed Personalty.

157.

Plaintiffs are entitled to a declaratory judgment that a constructive trust should not be imposed over the Disputed Personalty on behalf either of Dollarhide or Nelcela.

## COUNT ELEVEN

### Declaratory Judgment that Plaintiffs did not breach a contract with Nelcela and Dollarhide.

158.

Plaintiffs incorporate by reference the allegations in Paragraphs 1 through and including 157 of this Complaint.

159.

A current and justiciable controversy now exists between Plaintiffs, on the one hand, and Dollarhide and Nelcela, on the other hand, with respect to whether Plaintiffs breached a contract with Dollarhide or Nelcela.

160.

Nelcela and Dollarhide have asserted that Dollarhide or Nelcela had entered

- 42 -

into contractual relationship with Plaintiffs and that Plaintiffs breached that agreement. Plaintiffs dispute these assertions.

161.

Plaintiffs are entitled to a declaratory judgment that they have not breached any contracts they may have with Dollarhide and/or Nelcela.

## COUNT TWELVE

### Declaratory Judgment that Plaintiffs have not breached any covenant of good faith and fair dealing.

162.

Plaintiffs incorporate by reference the allegations in Paragraphs 1 through and including 161 of this Complaint.

163.

A current and justiciable controversy now exists between Plaintiffs, on the one hand, and Dollarhide and Nelcela, on the other hand, with respect to whether Plaintiffs breached a contractual covenant of good faith and fair dealing with Dollarhide or Nelcela.

164.

Nelcela and Dollarhide have asserted that Dollarhide or Nelcela have entered into contractual relationship with Plaintiffs and that Plaintiffs breached a contractual covenant of good faith and fair dealing. Plaintiffs dispute these

assertions.

### 165.

Plaintiffs are entitled to a declaratory judgment that they have not breached any contractual covenants of good faith and fair dealing between themselves and Nelcela or Dollarhide.

## COUNT THIRTEEN

### Declaratory Judgment that Plaintiffs have not committed fraud against or fraudulently induced Nelcela or Dollarhide.

### 166.

Plaintiffs incorporate by reference the allegations in Paragraphs 1 through and including 165 of this Complaint.

### 167.

A current and justiciable controversy now exists between Plaintiffs, on the one hand, and Dollarhide and Nelcela, on the other hand, with respect to whether Plaintiffs committed fraud against or fraudulently induced Dollarhide or Nelcela.

### 168.

Nelcela and Dollarhide have asserted that Plaintiffs fraudulently induced Dollarhide or Nelcela enter into or maintain contractual relations to supply software and/or fraudulently conspired to deprive Nelcela or Dollarhide of income or adequate compensation. Plaintiffs dispute these assertions.

ATL01/11447974v6

169.

Plaintiffs are entitled to a declaratory judgment that they have not committed fraud against Nelcela or Dollarhide and that they have not fraudulently induced them to enter into or maintain contractual relations.

## COUNT FOURTEEN

### Declaratory Judgment that Plaintiffs have not infringed any valid copyrights of Nelcela or Dollarhide.

170.

Plaintiffs incorporate by reference the allegations in Paragraphs 1 through and including 169 of this Complaint.

171.

A current and justiciable controversy now exists between Plaintiffs, on the one hand, and Dollarhide and Nelcela, on the other hand, with respect to whether Plaintiffs have infringed certain copyrights allegedly owned by Dollarhide or Nelcela.

172.

Nelcela and Dollarhide have asserted that Plaintiffs have infringed valid copyrights owned by Nelcela or Dollarhide. Plaintiffs dispute these assertions.

173.

Plaintiffs are entitled to a declaratory judgment that they have not infringed

- 45 -

any valid copyrights owned by Nelcela or Dollarhide.

174.

Plaintiffs are also accordingly entitled to the relief requested below.

## PRAYER FOR RELIEF

WHEREFORE, InterCept and EPX where applicable, seek judgment against Defendants as follows:

1.     Actual damages, including compensatory and consequential damages, in an amount to be determined at trial;

2.     Punitive damages;

3.     Expenses of litigation, including reasonable attorney, accountant, and other expert fees and other disbursements;

4.     Prejudgment and post judgment interest on all amounts awarded to the fullest extent permitted by law or in equity;

5.     Such other and further relief as may be just and proper.

WHEREFORE, Plaintiffs seek declaratory judgment against Defendants that Dollarhide improperly removed and converted physical copies of the EPX Operations Software and that the Disputed Chattels are the property of EPX and InterCept and Dollarhide has no rights in them.  InterCept and EPX seek injunctive

- 46 -

relief ordering Dollarhide to return EPX's physical copies of the EPX Operations Software.

WHEREFORE, Plaintiffs seek declaratory judgment against Defendants that Dollarhide and Nelcela are estopped from denying EPX's ownership of the EPX Operations Software; that Dollarhide and Nelcela transferred ownership of the EPX Operations Software to EPX via the Merger Agreement; and that confirms EPX and InterCept's ownership of the EPX Operation Software. Plaintiffs also seek an order directing Dollarhide and Nelcela to take all necessary steps to effect the confirmation of ownership of the EPX Operations Software upon EPX. Alternatively, Plaintiffs seek a declaratory judgment against Dollarhide and Nelcela that EPX and InterCept have at least an implied nonexclusive license to the EPX Operations Software.

WHEREFORE, Plaintiffs seek declaratory judgment against Defendants that Plaintiffs have not wrongfully seized or converted the Disputed Personalty, that Dollarhide and Nelcela are not entitled to replevin of, damages for, or a constructive trust in the Disputed Personalty; that Plaintiffs have not breached either a contract or covenant of good faith and fair dealing between Plaintiffs, on the one hand, and Dollarhide and Nelcela, on the other; that Plaintiffs have not

committed fraud against or fraudulently induced Nelcela or Dollarhide; and that

Plaintiffs do not infringe any valid copyrights owned by Nelcela or Dollarhide.

### JURY DEMAND

Plaintiffs demand a trial by jury.

Respectfully submitted, this 21st day of August, 2003.

ALSTON & BIRD L.L.P.

John L. Latham
Georgia Bar No. 438675
Patrick Flinn
Georgia Bar No. 264540
Scott P. Hilsen
Georgia Bar No. 355221

1201 West Peachtree Street
Atlanta, Georgia 30309-3424
404-881-7000

**Counsel for Plaintiffs**

ATL01/11447974v6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| INTERCEPT, INC. and INTERCEPT PAYMENT SOLUTIONS, INC. f/k/a ELECTRONIC PAYMENT EXCHANGE, INC.; JOHN M. PERRY; and TIMOTHY BARNETT, | ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) CIVIL ACTION NO: |
| ALEC DOLLARHIDE, LEN CAMPAGNA, and NELCELA, INC., | ) _____ ) ) ) ) |
| Defendants. | ) |

## CERTIFICATION OF COMPLIANCE WITH LR 5.1(B)

This is certify that the foregoing pleading was prepared using Times New Roman 14 point font in accordance with LR 5.1(B).

This 21st day of August, 2003.

_____
Scott A. Wharton

ORIGINAL

AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____NORTHERN_____ District of _____GEORGIA_____

INTERCEPT, INC. and INTERCEPT PAYMENT SOLUTIONS,
INC. f/k/a ELECTRONIC PAYMENT EXCHANGE, INC.,
JOHN M. PERRY, and TIMOTHY BARNETT

**SUMMONS IN A CIVIL CASE**

V.

ALEC DOLLARHIDE, LEN CAMPAGNA, and
NELCELA, INC.

CASE NUMBER:  1:03-CV-2505

TO: (Name and address of Defendant)

NELCELA, INC.
7500 E. PINNACLE PEAK ROAD
H221
SCOTTSDALE AZ  85255

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

JOHN L. LATHAM
ALSTON & BIRD LLP
1201 W PEACHTREE STREET
ATLANTA GA  30309

an answer to the complaint which is herewith served upon you, within ____20____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable
period of time after service.

LUTHER D. THOMAS

AUG 2 2 2003

CLERK                                                                  DATE

J Drupp

(By) DEPUTY CLERK

AO 440 (Rev. 10/93) Summons in a Civil Action

# ORIGINAL

## UNITED STATES DISTRICT COURT

_____ NORTHERN _____ District of _____ GEORGIA _____

INTERCEPT, INC. and INTERCEPT PAYMENT SOLUTIONS,
INC. f/k/a ELECTRONIC PAYMENT EXCHANGE, INC.,
JOHN M. PERRY, and TIMOTHY BARNETT

V.

ALEC DOLLARHIDE, LEN CAMPAGNA, and
NELCELA, INC.

### SUMMONS IN A CIVIL CASE

CASE NUMBER:  1:03-CV-2505

TO: (Name and address of Defendant)
LEN CAMPAGNA
NELCELA, INC.
7500 E. PINNACLE PEAK ROAD
H221
SCOTTSDALE AZ  85255

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

JOHN L. LATHAM
ALSTON & BIRD LLP
1201 W PEACHTREE STREET
ATLANTA GA  30309

an answer to the complaint which is herewith served upon you, within ____20____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

LUTHER D. THOMAS

CLERK

AUG 2 2 2003

DATE

_J. Ivey_
(By) DEPUTY CLERK

# ORIGINAL

AO 440 (Rev. 10/93) Summons in a Civil Action

## UNITED STATES DISTRICT COURT

NORTHERN _____ District of _____ GEORGIA _____

INTERCEPT, INC. and INTERCEPT PAYMENT SOLUTIONS,
INC. f/k/a ELECTRONIC PAYMENT EXCHANGE, INC.,
JOHN M. PERRY, and TIMOTHY BARNETT

V.

ALEC DOLLARHIDE, LEN CAMPAGNA, and
NELCELA, INC.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:  1:03-CV-2505

TO: (Name and address of Defendant)

    ALEC DOLLARHIDE
    12712 E TURQUOISE
    SCOTTSDALE AZ  85259

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

    JOHN L. LATHAM
    ALSTON & BIRD LLP
    1201 W PEACHTREE STREET
    ATLANTA GA  30309

an answer to the complaint which is herewith served upon you, within ____20____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

AUG 2 2 2003

LUTHER D. THOMAS
CLERK

_____
DATE

_____
(By) DEPUTY CLERK

ORIGINAL

♦AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

NORTHERN _____ District of _____ GEORGIA _____

INTERCEPT, INC. and INTERCEPT PAYMENT
SOLUTIONS, INC. ET AL.
            V.

ALEC DOLLARHIDE ET AL

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:     **1·03·CV-2505**

TO: (Name and address of Defendant)

RONAN & FIRESTONE PLC
649 NORTH SECOND AVENUE
PHOENIX, ARIZONA  85003

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

JOHN L. LATHAM
ALSTON & BIRD LLP
1201 W PEACHTREE STREET
ATLANTA GA  30309

an answer to the complaint which is herewith served upon you, within _____ *20* _____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable
period of time after service.

LUTHER D. THOMAS

AUG 2 2 2003

CLERK

(BY) DEPUTY CLERK

DATE